IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

U, INCORPORATED,

        Plaintiff,

v.                                      Case No. 14-2287-JTM

SHIPMATE, INC. and COORDINATING
COMMITTEE FOR AUTOMOTIVE REPAIR,

        Defendants.

## MEMORANDUM AND ORDER

Before the court are defendant ShipMate, Inc.'s ("ShipMate") Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 41) and Plaintiff U, Inc.'s Motion Seeking Leave to File a Supplemental Brief (Dkt. 53). This case arises out of the parties' competing online hazardous materials training courses. Plaintiff originally filed a seven-count complaint against ShipMate and the Coordinating Committee for Automotive Repair ("CCAR") in Kansas state court. Four of the counts are directed at ShipMate. The issue before the court is whether ShipMate's conduct directed at the state of Kansas is sufficient to subject it to personal jurisdiction for these claims.

### I. Background

ShipMate is a California corporation providing online training course content and hosting with its principal place of business in Sisters, Oregon. (Dkt. 43, at 1). Co-defendant CCAR is a foreign corporation whose principal place of business was in Kansas until 2011. CCAR specializes in marketing educational materials to automotive

dealers. (Dkt. 38, at 4). Plaintiff is a Kansas corporation headquartered in Overland Park, Kansas. (Dkt. 38, at 2). It develops and markets web-based training courses on a variety of subjects to individuals residing in Kansas and throughout the United States. (Dkt. 38, at 4).

Beginning in June 2005, ShipMate developed original content for an online hazardous materials training program called "HazMatU," which CCAR agreed to host. (Dkt. 43, at 2). However, CCAR lacked the capacity to host HazMatU and turned to plaintiff for hosting services.  On or about March 16, 2007, plaintiff contracted with CCAR to host HazMatU on plaintiff's online learning management system ("LMS")[1] (Dkt. 38, at 5). The parties were thus situated regarding HazMatU: ShipMate provided the course content, plaintiff hosted and provided interface and administrative services for the content, and CCAR marketed the content. HazMatU was hosted alongside plaintiff's own safety training program called "S/P2". (Dkt. 38, at 6). The HazMatU arrangement lasted until October 2013, when plaintiff terminated the agreement, citing CCAR's non-performance. (Dkt. 38, at 8).

The contractual relationship between CCAR and plaintiff for hosting HazMatU lasted from March 2007 to July 2013. The contract provided CCAR with passcode access to plaintiff's LMS, including confidential customer information. (Dkt. 39, at 8). The contract forbade the use of any customer information other than to further plaintiff's

---

[1] An LMS is an internet software platform that delivers, manages, and administers online educational courses. An LMS provides tools and interfaces to persons with administrative access whereby they can view course information, including information about the end-users. (Dkt. 38, at 5).

interests. It also provided that, after termination, CCAR must cease using and return or destroy all confidential information derived from plaintiff's LMS. (Dkt. 38, at 8).

Beginning on or about July 7, 2013, ShipMate developed a new hazardous materials course called GHS HazCom2012 ("GHS"), which has been hosted on ShipMate's own LMS since late summer 2013.[2] (Dkt. 43, at 3). In spring 2014, CCAR contracted with ShipMate to make a new product called "CCAR HazmatU" to replace HazMatU (Dkt. 43, at 3-4). CCAR HazmatU is an expanded version of ShipMate's GHS content that is hosted on ShipMate's LMS and marketed by CCAR. (Dkt. 43, at 3). GHS and CCAR HazmatU are direct competitors of plaintiff's S/P2 product.

Shortly after the launch of CCAR HazmatU, plaintiff filed this case in Kansas state court. Defendants removed the case to federal court, and plaintiff amended its complaint on August 25, 2014. (Dkt. 38) The Amended Complaint alleges the following five counts against ShipMate: violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, for unauthorized use of plaintiff's customer list with intent to defraud; violation of the Kansas Uniform Trade Secrets Act, K.S.A. 60-3320 *et seq.*, for misappropriating plaintiff's customer list; false advertising in violation of the Lanham Act, 15 U.S.C. § 1125, for directly or impliedly stating that CCAR courses have the characteristics or achieved recognition actually belonging to S/P2; intentional interference with current and prospective business advantage for interfering with plaintiff's current and known prospective customers via information appropriated by

---

[2] ShipMate developed its own LMS sometime in 2006, which now hosts GHS and CCAR HazmatU. (Dkt. 43, at 3). ShipMate's LMS is independent of plaintiff's LMS.

CCAR; and trademark infringement for defendants' inclusion of plaintiff's S/P2 mark in online marketing to plaintiff's current and known prospective customers.

ShipMate now moves to dismiss for lack of personal jurisdiction.

## II. Analysis

A court must exercise personal jurisdiction over the parties to render a valid judgment. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998). Plaintiff bears the burden of establishing personal jurisdiction over defendant when opposing a motion to dismiss for lack thereof. *Id.* at 1091. The court "must accept as true" the well-pled facts of the complaint "to the extent they are uncontroverted by the defendant's affidavits." *Toytrackerz LLC v. American Plastic Equip., Inc.*, 615 F. Supp. 2d 1242, 1248-49 (D. Kan. 2009) (citing *Ten Mile Indust. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)). "To obtain personal jurisdiction over a defendant not a resident of nor found in the forum state, the federal court must follow the state's jurisdictional statute . . . which is subject to the bounds of constitutional due process." *Leney v. Plum Grove Bank*, 670 F.2d 878, 879 (10th Cir. 1982); *see also* FED. R. CIV. P. 4(e). "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue." *OMI Holdings, Inc.*, 149 F.3d at 1090 (quoting *Federated Rural Electric Ins. Corp. v. Kootenai Electric Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994)).

The Due Process Clause protects a party from being subject to judgment in a forum "with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation omitted). "Due process

4

requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (alteration in *Helicopteros*). The 'minimum contacts' requirement is satisfied when a defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Two categories of personal jurisdiction arise under the 'minimum contacts' requirement: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *International Shoe*, 326 U.S. at 317). "Mere purchases, even if occurring at regular intervals" are alone insufficient to warrant general jurisdiction. *Daimler AG*, 134 S. Ct. at 757 (quotation omitted). Business dealings, contractual relationships, or correspondence with forum residents do not subject a defendant to general jurisdiction. *Shrader v. Biddinger*, 633 F. 1235, 1247 (10th Cir. 2011). "[G]eneral jurisdiction over a website that has no intrinsic connection with a forum state requires commercial activity

carried on with forum residents in such a sustained manner that it is tantamount to physical presence in that state." *Id.* at 1246.

ShipMate engaged in ongoing obligations with forum resident CCAR and now directs its own content into the forum. However, it has neither offices nor a registered agent in the forum. Nor does it maintain production facilities or brick and mortar retail locations in the forum. Further, ShipMate's direct economic activity with Kansas residents is not continuous – its customers use courses only as-needed. Therefore, ShipMate's contacts with Kansas are not so systematic and continuous as to render it at home there. General jurisdiction is not proper over ShipMate.

## B. Specific Jurisdiction

A court may assert specific jurisdiction over a nonresident defendant who has not consented to suit in the forum "if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (quoting *Helicopteros*, 466 U.S. at 414). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact in the forum State" for specific jurisdiction. *Id.* at 474 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The nonresident must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475 (quoting *Hanson*, 357 U.S. at 253). A defendant purposefully avails himself of the privileges and protections of the forum's laws if he "deliberately engage[s] in significant activities within a State . . . or has created continuing obligations

between himself and residents of the forum." *Id.* at 475-76 (quotations and citations omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of a third party." *Id.* at 474-75 (quotations and citations omitted).

In the context of the internet, maintenance of a web site, without something more, does not invoke specific jurisdiction. *Shrader*, 633 F.3d at 1241. A defendant is subject to specific jurisdiction if it intentionally directs internet activity into the State for the purpose of engaging in business or other transactions within the State, and that activity creates a possible cause of action cognizable by the State in a person within the State. *Id.* at 1240.

Here, ShipMate has purposefully availed itself of the privilege of conducting activities in Kansas by its agreement with CCAR from 2005 to 2011, and by directing CCAR HazmatU into Kansas.

### 1. ShipMate's HazMatU Activity in Kansas

In 2005, ShipMate agreed to provide HazMatU web content to CCAR, then a Kansas resident. The agreement licensed CCAR to use and host the content for ShipMate's economic gain. ShipMate continued to provide web content to CCAR under the agreement and a subsequent contract until at least 2011, when CCAR ceased being a Kansas resident. ShipMate thus intentionally directed its web content into Kansas, maintaining a continuing obligation over the course of nearly six years between itself and a Kansas resident. ShipMate purposefully availed itself of the privilege of

conducting long-term economic activity in Kansas. ShipMate is therefore subject to personal jurisdiction in Kansas for any possible cause of action arising out of its provision of HazMatU content to CCAR from 2005 to 2011.

Plaintiff's causes of action regarding its customer information, Counts I, II, and VI, naturally arise out of ShipMate's provision of HazMatU content to CCAR from 2005 to 2011. CCAR and ShipMate gained access to plaintiff's customer information through the HazMatU relationship. ShipMate directed its activity at Kansas at the outset of the relationship and for six years following. Although the claimed act of appropriating the information occurred after CCAR left the forum, access to the information was only possible because of the activity directed at Kansas. Therefore, the causes of action relate to ShipMate's intentional direction of HazMatU content into Kansas while CCAR was a Kansas resident. Specific jurisdiction is proper for these claims.

### 2. ShipMate's LMS Activity in Kansas

In 2006, ShipMate created its own LMS, which began hosting ShipMate's GHS content in 2013. In 2014, ShipMate adapted GHS in expanded form to create CCAR HazmatU. ShipMate currently hosts and provides content for GHS and CCAR HazmatU on its LMS. CCAR HazmatU is purposefully directed at every Toyota, Scion, and Lexus auto dealer in the United States, some of which are in Kansas. (Dkt. 11-1, at 4). ShipMate provides web content knowing that CCAR will market it throughout the nation and into Kansas. ShipMate's own LMS had 256 users in Kansas as of September 15, 2014. (Dkt. 43, at 4). It is unclear whether any of these Kansans are using the GHS or CCAR HazmatU content. ShipMate asserts that it had "not yet collected revenue from

any of [those] customers in connection with the competing GHS program that U-Inc. complains about in this case" as of September 15, 2014. (Dkt. 43, at 4). However, neither the collection of revenue nor the number of users in the forum is dispositive here because ShipMate need only purposefully direct its economic activity at Kansas to produce personal jurisdiction. It is clear that ShipMate is directing its web content, whether in the form of GHS or CCAR HazmatU, into Kansas via its LMS. ShipMate is therefore subject to specific personal jurisdiction for claims related to or arising out of its current LMS activity directed at Kansas.

All of plaintiff's claims against ShipMate relate to the current products directed at Kansas. Count I alleges that ShipMate is currently using plaintiff's customer list to fraudulently market its new LMS products. Count II alleges misappropriation of plaintiff's customer information to unfairly compete against S/P2. Count V alleges that ShipMate's CCAR HazmatU content, currently on its LMS, is being falsely advertised as having characteristics or recognition actually belonging to plaintiff's S/P2. Count VI alleges that ShipMate is using confidential customer information to interfere with plaintiff's current and prospective customers. Finally, Count VII alleges that ShipMate's content, hosted on its LMS, improperly includes plaintiff's trademark in online marketing. These four claims are related to ShipMate's current activity directed at Kansas: web content for GHS or CCAR HazmatU on ShipMate's LMS. Therefore, specific jurisdiction is proper for these claims.

## C. Fair Play and Substantial Justice

Even if the conditions for general or specific jurisdiction are met, maintenance of the suit must "not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp.*, 444 U.S. at 292 (quotation omitted). Thus, litigation in the forum must be reasonable in light of "the burden on the defendant[,] . . . the forum State's interest in adjudicating the dispute[,] the plaintiff's interest in obtaining convenient and effective relief," judicial efficiency, and social policy of the several States. *Id.* Upon a showing of minimum contacts, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Schrader*, 633 F.3d at 1240.

ShipMate argues that the forum is unreasonable because it is not a resident of the forum, it had to hire counsel in the forum, the forum's interest is small because only a small number of its customers are there, and plaintiff can get relief in another forum. ShipMate also argues that Kansas is not the most efficient forum because no defendants reside there, but does not suggest a more efficient alternative.

However, ShipMate is no more burdened by litigating in Kansas than it would be in any other foreign-state forum. Twenty-first century technology makes travel and communication between Sisters, Oregon and Kansas City little more burdensome than between Sisters and Reno, NV – a neighboring foreign-state. Plaintiff and the judiciary in whole have efficiency interests in resolving this dispute as one litigation, rather than litigating each defendant separately. Here, there is no alternative forum where any two parties are at home. Kansas is geographically between both defendants, and serves to

centralize the parties. Kansas has an interest in enforcing its consumer protection laws when violations thereof arise out of contacts within the state. Further, the state-law claims here arise out of the Kansas Uniform Trade Secrets Act, which reflects the model Uniform Trade Secrets Act that has been adopted by most jurisdictions. Thus, resolution of the dispute under Kansas law comports with the policy of most states on the issues.

ShipMate fails to make a compelling case that the forum is unreasonable. Kansas is a fair and just forum.

### D. Plaintiff's Motion to File Surreply is Denied

On November 20, 2014, plaintiff filed a motion seeking leave to file a supplemental response to ShipMate's motion to dismiss. (Dkt. 53). Local rules do not provide for the filing of surreplies; they are allowed only in "exceptional circumstances compelling the filing of such a pleading." *IMC Chems. v. Nitro*, 95 F. Supp. 2d 1198, 1214 (D. Kan. 2000). The court finds no such circumstances here. Although plaintiff cites newly discovered information as its basis for surreply, the request is moot because the Motion to Dismiss is denied.

IT IS ACCORDINGLY ORDERED this 10th day of December, 2014, that ShipMate's Motion to Dismiss (Dkt. 41) is DENIED.

IT IS FURTHER ORDERED that plaintiff's Motion for Leave to File a Supplemental Brief (Dkt. 53) is DENIED as moot.


 s/ J. Thomas Marten
 J. THOMAS MARTEN, JUDGE