# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

U, INCORPORATED,

        Plaintiff,

v.                                                                               Case No. 2:14-cv-2287-JTM-TJJ

SHIPMATE, INC., et al.,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel (ECF No. 100). Pursuant to Fed. R. Civ. P. 37, Plaintiff asks the Court to overrule the objections and order Defendant ShipMate, Inc. to provide answers responsive to Plaintiff U, Inc.'s First Interrogatories to ShipMate and produce documents responsive to Plaintiff U, Inc.'s First Request for Production of Documents to ShipMate, Inc. ShipMate opposes the motion. As set forth below, ShipMate's objections to the discovery requests are overruled and Plaintiff's motion is granted.

## I.     Relevant Background

On April 14, 2015, the Court held a telephone conference with counsel to discuss an email message that Plaintiff's counsel submitted prior to filing a motion to compel, along with ShipMate's response thereto.[1] The Court agreed to construe Plaintiff's email as a motion to compel, and set an expedited briefing schedule for the parties to file supplemental briefs. The Court found that the parties have complied with their Fed. R. Civ. P. 37(1)(1) and D. Kan. R. 37.2 obligations to confer.[2]

---

[1] *See* Minute Sheet (ECF No. 98).

[2] *Id.* at 2.

Plaintiff served its First Interrogatories and First Request for Production of Documents on Defendant ShipMate on January 5, 2015.[3] ShipMate had produced no documents until the Court ordered that, by the close of business on April 15, 2015, ShipMate was to deliver to Plaintiff all non-privileged responsive documents it had agreed to produce.[4] Plaintiff received the first responsive documents on or near April 16. Since that date, the Court is not aware that ShipMate has produced any additional documents.

Pursuant to the briefing schedule the Court set, Plaintiff filed its supplemental memorandum (ECF No. 100) on April 21, 2015.[5] ShipMate filed its response (ECF No. 104) on May 1, 2015, and Plaintiff filed its reply (ECF No. 111) on May 6, 2015. ShipMate has posed objections to every discovery request.

Plaintiff requests in its motion that the Court order ShipMate to answer the 31 interrogatories it propounded and to produce documents responsive to its 23 requests for production. Throughout counsel's written exchange since Plaintiff served its discovery requests, ShipMate has not withdrawn any of its objections. Accordingly, the Court has examined those objections and Plaintiff's responses thereto. The Court is now prepared to rule on the disputes at issue in Plaintiff's motion to compel.

## II.     Summary of the Parties' Arguments

Plaintiff brought this action against Defendants ShipMate and the Coordinating Committee for Automotive Repair ("CCAR"), alleging that they misappropriated Plaintiff's

---

[3] *See* Notice (ECF No. 61).

[4] *See* ECF No. 98 at 2.

[5] For clarity, Plaintiff's Supplemental Memorandum is identified on the docket sheet as Plaintiff's Motion to Compel.

electronically stored confidential and propriety trade secret information, specifically Plaintiff's customer and prospective customer information. Plaintiff alleges that Defendants knowingly and with intent to defraud Plaintiff accessed, downloaded and used Plaintiff's information for their own business purposes. Plaintiff and CCAR had a license agreement granting CCAR limited authorized use of Plaintiff's information, which Plaintiff alleges CCAR breached by downloading and disclosing the information to ShipMate. Plaintiff asserts claims against ShipMate for violation of the Computer Fraud and Abuse Act, misappropriation of trade secrets, false advertising, interference with current and prospective business advantage, and trademark infringement.[6]

In its Answer, ShipMate raises a number of affirmative defenses including unclean hands, fair use, failure to mitigate, laches, estoppel, and license.[7] ShipMate also denies that CCAR had any authority, actual or apparent, to act for ShipMate in any capacity at any relevant time.[8] Plaintiff asserts that it is entitled to the discovery it propounded to test the basis of ShipMate's affirmative defenses and ShipMate's claim that CCAR had no authority to act on its behalf.

ShipMate argues that it should not be required to produce information going back to 2007 because the parties' business relationship did not begin to deteriorate until October, 2013, thereby rendering both irrelevant and unduly burdensome the request for documents from six years earlier. ShipMate recently amended its Rule 26 disclosures to omit any reference to Plaintiff's alleged infringement of ShipMate's copyrights and trademarks, which ShipMate

---

[6] *See* Amended Complaint (ECF No. 38). Plaintiff also alleges two counts of breach of contract against CCAR only.

[7] *See* ECF No. 78 at 19-20.

[8] *Id.* at 6 ¶ 23.

contends makes discovery on any such infringement wholly irrelevant.[9]  As for information relating to CCAR, ShipMate asserts that documents going back to 2007 are irrelevant because Plaintiff's claims against CCAR deal with issues that arose in 2013, and that Plaintiff should seek such documents directly from CCAR and not from ShipMate.

### III.     Whether the Discovery Sought is Relevant and Discoverable

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery.  It provides that the parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."[10]  Relevancy is broadly construed, and a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[11]  Furthermore, "the touchstone of the relevancy of documents and information requested is not whether the discovery will result in evidence that is, or even may be, admissible at trial, but rather whether the discovery is 'reasonably calculated to lead to the discovery of admissible evidence.'"[12]  "For good cause, the court may order discovery of any matter relevant to the *subject matter* involved in the action."[13]

---

[9] On April 10, 2015, ShipMate filed a civil action against U, Inc. in the Central District of California alleging copyright and trademark infringement and false advertising/unfair competition ("the California action").  *See* ECF No. 100-2.

[10] Fed. R. Civ. P. 26(b)(1).

[11] *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).

[12] *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

[13] Fed. R. Civ. P. 26(b)(1) (emphasis added).

When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[14]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[15]  Relevancy determinations are generally made on a case-by-case basis.[16]

In this action, the Court finds that the relevancy of the discovery called for by Plaintiff's opening interrogatories and request for production of documents is apparent on its face.  The requests directly relate to the claims Plaintiff asserts or to the defenses raised by ShipMate or CCAR.  While ShipMate takes the position that it should not be required to produce documents relating to issues between Plaintiff and CCAR, the Court rejects this argument because the scope of Rule 26 reaches "any matter relevant to the subject matter involved in the action."[17]

ShipMate argues that much of the outstanding discovery that Plaintiff is seeking is irrelevant to what it describes as primarily a misappropriation of trade secrets case.  ShipMate vigorously denies that this case in any way involves issues related to ShipMate's claim (asserted in the California action) that Plaintiff infringed on ShipMate's copyrights to certain course material that Plaintiff had hosted on its LMS.  Plaintiff responds by challenging the viability of

---

[14] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[15] *McBride*, 250 F.R.D. at 586.

[16] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[17] Fed. R. Civ. P. 26(b)(1).

5

the California action, which Plaintiff contends should be dismissed because it is a compulsory counterclaim to this action. The Court will not presume any future rulings by the presiding judge in the California action, and will not assess relevancy on that basis. The Court notes, however, that ShipMate includes in its Answer to Plaintiff's Amended Complaint the affirmative defense that Plaintiff's claims are barred by the doctrine of fair use.[18] The doctrine of fair use "is an equitable rule of reason that allows the use of copyrighted materials in limited circumstances."[19] ShipMate's invocation of the doctrine brings into play issues relating to Plaintiff's copyrighted materials and ShipMate's and/or CCAR's use of them, and to the extent that Plaintiff's discovery requests reach such issues, the Court finds the requests relevant to this action.

ShipMate also asserts the affirmative defense of unclean hands. The unclean hands doctrine provides that a party cannot obtain affirmative relief in equity with respect to a transaction in which the party has been guilty of inequitable conduct.[20] Plaintiff argues that it is entitled to conduct discovery to learn what inequitable conduct it allegedly committed. ShipMate responds by pointing to its amended Rule 26 disclosures in which it disavowed claims that Plaintiff infringed on ShipMate's copyrights and trademarks. ShipMate's amended disclosures do not remove its affirmative defense of unclean hands, and its Rule 26 disclosures remain quite broad. To the extent that Plaintiff's discovery requests reach information regarding Plaintiff's alleged unclean hands, the Court finds the requests relevant to this action.

---

[18] ECF No. 78 at 19.

[19] *Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 943, 955 (D. Kan. 2004).

[20] *Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 302 F. Supp. 2d 1267, 1281 (D. Kan. 2004) (quoting *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 720, 924 P.2d 1239, 1250 (1996)).

In their briefing, Plaintiff addresses ShipMate's objections categorically and ShipMate responds in kind.  Accordingly, the Court will fashion its analysis in the same manner.

A. **Conditional Objections**

Plaintiff asserts that ShipMate has stated conditional objections across the board which violate both the letter and spirit of *Sprint Communications Co., L.P. v. Comcast Cable Communications, LLC*.[21]  Conditional objections occur when "a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections."[22]  ShipMate protests the characterization of its responses as conditional objections, stating that they are not "substantively conditional" because they "were meant to define the scope of what ShipMate considers permissive discovery and indicate clearly what it would be producing."[23]  The Court has reviewed each of the actual interrogatory and document request responses and finds that they are indeed classic conditional objections.  ShipMate's typical response begins with objections and then states the following: "Without waiving and subject to these objections, ShipMate responds as follows**."**  ShipMate's responses also appear, for the most part, to be generic boilerplate objections with no rational substantive basis.  To the extent that the boilerplate objections lack specificity, ShipMate has not met its burden to show why the discovery requests are improper.[24]

---

[21] Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 1569963 (D. Kan. April 18, 2014) ("*Sprint II*").

[22] *Westlake v. BMO Harris Bank N.A.*, No. 13-2300-CM-KGG, 2014 WL 1012669, *3 (D. Kan. March 17, 2014) (citing *Sprint II*, 2014 WL 1569963).

[23] ECF No. 104 at 17.

[24] *See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. March 30, 2005).

Judge O'Hara has written a thoughtful examination of conditional objections which catalogs the reasons various courts have given as to why such objections are invalid and unsustainable.[25] Among the reasons is that objections followed by an answer "preserve nothing and serve only to waste the time and resources of both the Parties and the Court."[26] As another court noted, "answering subject to an objection lacks any rational basis. There is either a sustainable objection to a question or request or there is not.[27] In this case, ShipMate's conditional objections leave the reader confused and do not reveal or identify what responsive documents do or do not exist. Rules 33 and 34 demand an answer to an interrogatory, a statement that inspection or production will be permitted as requested, or an objection. The discovery rules contemplate no other response.

The Court finds that ShipMate has waived its objections to Interrogatory Numbers 1-12, 14-19, and 21, and to Request for Production Numbers 1-7, 9-12, 14-21, and 26-31, and the Court grants Plaintiff's motion with respect to those responses.

### B.     Communications on Specific Subjects Back to 2007

Plaintiff next addresses the group of discovery requests to which ShipMate refused to produce any documents or limited its responses to documents from October 2013 forward, despite those requests having sought documents from and after January 1, 2007. Plaintiff points out that it entered into a License and Services Agreement with CCAR in 2007 which allowed

---

[25] *Sprint v. Comcast Cable Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 545544 (D. Kan. Feb. 11, 2014) (*"Sprint I"*).

[26] *Id.* at *2 (quoting *Consumer Elecs. Ass'n v. Compras and Buys Magazine, Inc.*, No. 08-21085, 2008 WL 4327253, at *2 (S.D. Fla. Sept. 18, 2008)).

[27] *Sprint I*, 2014 WL 545544, at *3 (quoting *Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-cv-537-FtM-29SPC, 2011 WL 1627165, at *2 (M.D. Fla. April 29, 2011)).

CCAR access to Plaintiff's customer and prospective customer information from Plaintiff's LMS, or learning management system.  Under the Agreement, CCAR had a limited license to provide certain marketing services for Plaintiff's S/P2 courses, and towards that end CCAR had access to information about Plaintiff's customers, their purchase histories, their passwords and PINS, account IDs, training records, and contact information.  Also beginning in 2007, CCAR marketed some of ShipMate's HazmatU courses, and at CCAR's request Plaintiff agreed to provide and deliver HazmatU to Plaintiff's customers through Plaintiff's LMS.  ShipMate was to have no rights in any of the information on Plaintiff's LMS, no access to confidential customer and potential customer information on the LMS and no access to the purchase histories, passwords, PINS, account IDs, training records, and contact information.

Plaintiff asserts that it terminated its relationship with CCAR in October, 2013, but the parties were trying to work out differences with a new contract.  Plaintiff allowed CCAR to continue marketing ShipMate's HazmatU courses on Plaintiff's LMS, but only certain individuals at CCAR had permission to access Plaintiff's LMS.  In addition, CCAR had a continuing obligation to protect the confidentiality of Plaintiff's information.

Plaintiff alleges that CCAR misappropriated and provided to ShipMate extensive trade secret information from Plaintiff's confidential LMS, including purchase histories of Plaintiff's products, passwords, PINS, account IDs, and other Confidential Information.  Plaintiff alleges that ShipMate incorporated Plaintiff's trade secret information into a separate LMS that ShipMate and CCAR used to launch a competing product in May of 2014.  Plaintiff further alleges that ShipMate and CCAR have marketed the competing product to Plaintiff's customers using Plaintiff's confidential and trade secret information.

ShipMate takes the position that because it has only been accused of misappropriating Plaintiff's alleged trade secrets and has not actually been found liable, Plaintiff should have to identify the misappropriated customer and other information rather than use discovery to find it. ShipMate also argues that because the dispute between Plaintiff and Defendants arose in 2014, it is unreasonable to seek documents which predate the alleged wrongdoing by seven years. ShipMate's arguments do not address the relevant issues and reveal a complete lack of understanding of the scope of discovery. Under Plaintiff's theory of the case, ShipMate had access to Plaintiff's confidential and trade secret information beginning in 2007. Plaintiff is entitled to conduct discovery to learn what, when, and how ShipMate allegedly obtained Plaintiff's information, both for purposes of liability and for damages.

Insofar as ShipMate objects to producing information from and after January 1, 2007 on the grounds that it is irrelevant, or that the discovery request is vague, ambiguous, and overbroad, the objection is overruled.

ShipMate also asserted the unsupported objection that such requests are burdensome. In the briefing for this motion, ShipMate submits the affidavit of its president, Steven Hunt, concerning the cost and burden that would be involved if ShipMate were to have to review its records for information dating back to 2007. Mr. Hunt addresses the amount of time and the expense it would take for him to find emails dating back to 2007. Emails do not constitute all of the documents Plaintiff seeks. As Plaintiff points out, ShipMate identified the following categories of information in its Rule 26 disclosures as being "within its possession, custody, or control."

> Contracts between U, Inc. and CCAR, and CCAR and ShipMate;
> Communications between the parties;
> Documents sufficient to reflect the data at issue provided to ShipMate by CCAR;
> CCAR's contract with U, Inc.'s predecessor company owned by Lirel Holt;

10

> Documents sufficient to reflect all HazMatU customers;
> Documents sufficient to reflect customers exclusive to ShipMate or to CCAR;
> Payment records between U, Inc. and CCAR, and between CCAR and ShipMate;
> Content of U, Inc.'s LMS; and
> Content of ShipMate's LMS.[28]

The Court does not find persuasive ShipMate's argument that producing responsive documents from and after January 1, 2007 would be unduly burdensome, and its objection on that basis is overruled.

The Court overrules ShipMate's objections to Interrogatory numbers 13, 22 and 23, and to Request for Production numbers 13, 22, and 23.

### C.  Post 2014 Documents

ShipMate asserts that it should not be required to produce documents dated after May, 2014, because that is when it commenced selling a competing product and the information Plaintiff seeks would include information that is proprietary and confidential. ShipMate argues that Plaintiff should not be permitted to use this lawsuit to obtain irrelevant but highly proprietary confidential information from ShipMate concerning its new product. Plaintiff contends that, on the contrary, ShipMate's sale of a competing product provides a basis for it to be able to discover the requested information. Plaintiff alleges that ShipMate and CCAR misappropriated Plaintiff's confidential and proprietary information which they used in marketing ShipMate's competing product, and that the information is relevant to a calculation of Plaintiff's damages.

---

[28] ShipMate's Amended Rule 26 Disclosures, produced May 27, 2015 (ECF No. 128-5 at 6-7). The Court notes that in amending its Rule 26 disclosures, ShipMate did not narrow the time frame for the subject documents that are within its possession, custody, or control.

11

The Court finds that ShipMate does not have a valid objection which would allow it to withhold requested documents dated after May, 2014 in responding to the discovery requests at issue. Plaintiff seeks damages for misappropriation of trade secrets, which may include either actual loss or a reasonable royalty.[29] If ShipMate misused Plaintiff's confidential information from and after May, 2014, these documents would be relevant to both liability and damage issues. The Court overrules ShipMate's objection that it should not be required to produce documents dated May, 2014 and later in response to Request for Production numbers 14, 16, 20, 22, 24, 30, and 31, and in response to Interrogatory numbers 14, 16, and 20.

### D.      Documents Relating to GHS Hazard Communication Course

ShipMate has objected to producing documents concerning its GHS Hazard Communication Course, arguing that the facts and circumstances regarding it are not the subject of and are irrelevant to Plaintiff's claims and ShipMate's defenses in this action. Plaintiff describes the GHS Hazard Communication Course as the competing product ShipMate launched in May, 2014.

The Court finds that, as with ShipMate's objection to producing documents dated after May, 2014, the requested information is relevant to both liability and damages. Plaintiff's theory is that the launch of the new product on ShipMate's LMS involved trade secret information misappropriated from Plaintiff. Plaintiff is entitled to discovery on ShipMate's GHS Hazard Communication Course, and the Court overrules ShipMate's objections to Request for Production numbers 8, 25, and 28.

### E.      ShipMate's Request for Attorney's Eyes Only Protective Order

---

[29] *See* K.S.A. 6-3322.

On July 28, 2014, at the parties' request, the Court entered a Protective Order in this case.[30] The Court found that in their agreed-upon language, the parties had shown good cause under Fed. R. Civ. P. 26(c) for an order which would limit the disclosure, use, and dissemination of the parties' confidential information.[31] It is therefore clear that the parties were aware of the confidential nature of the information to be disclosed in discovery before they submitted the proposed order to the Court for approval.

In response to Plaintiff's opening discovery, ShipMate has repeatedly objected on the ground that Plaintiff is a direct competitor of ShipMate, and the protective order does not contain an "Attorney's Eyes Only" provision. In its response to Plaintiff's golden rule letter, ShipMate states that the protective order was entered long before it became apparent to ShipMate the scope of information Plaintiff would seek. In its response to the instant motion, ShipMate requests that it be allowed to negotiate an "Attorney's Eyes Only" protective order with Plaintiff and CCAR.[32]

Plaintiff objects to the entry of a more restrictive "Attorney's Eyes Only" protective order, particularly when the parties could have addressed such a provision when they were negotiating the protective order nearly one year ago. Plaintiff contends that the existing order provides the parties with adequate protection, which is supported in part by the fact that both Plaintiff and CCAR have produced all of their documents and information in discovery under the protection of the existing order. Plaintiff also asserts that one of its own employees is likely to provide expert testimony, and that Plaintiff would be disadvantaged if it were unable to share with its expert all of the evidence in the case. Finally, Plaintiff's counsel states that he does not

---

[30] ECF No. 31.

[31] *Id.* at 1-2.

[32] ECF No. 104 at 12.

13

have the knowledge and background to understand and assess information ShipMate would produce in a manner that would make it useful to his client.

"A party seeking that its information only be revealed in a certain way, such as limiting who can view or access the materials, under . . . Rule 26(c)(1)(G) must first establish that the information sought is a trade secret or other confidential research, development, or commercial information."[33]  The party must also show that disclosure of the information might be harmful, such as causing the disclosing party competitive harm.[34]  The only evidence ShipMate has offered is the affidavit of Steven Hunt, who states that much of the information that Plaintiff is seeking "is considered proprietary information that would damage my business irreparably if it were to be disclosed to UI or any other competitor."[35]  The Court does not find that ShipMate has satisfied its burden to show that the requested information is "a trade secret or other confidential research, development, or commercial information,"[36] nor has it shown the harm that might befall it by virtue of disclosure.

Even if ShipMate had met its burdens, the Court finds that entering an "Attorney's Eyes Only" protective order would hamper Plaintiff's ability to prosecute its case.[37]  Plaintiff indicates that Kyle Holt, one of its principals, will be an expert witness.  Without access to the information ShipMate produces, he could not adequately fill that role.  In addition, Plaintiff's counsel

---

[33] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 248 (D. Kan. 2010).

[34] *Id.* at 249.

[35] ECF No. 106 at 5.

[36] Fed. R. Civ. P. 26(c)(1)(G).

[37] *See Layne Christensen Co.*, 271 F.R.D. at 249-50 (courts are also to consider whether prohibiting certain persons' access to information would hamper party's ability to effectively proceed with and assess merits of litigation).

14

represents that he does not have the knowledge to fully understand and utilize the requested discovery and that his client effectively would be denied whatever information ShipMate might produce pursuant to an "Attorney's Eyes Only" protective order.

The Court will not enter another protective order or require Plaintiff and/or CCAR to negotiate a more restrictive protective order before ShipMate provides the discovery the Court is ordering it to produce.

IT IS HEREBY ORDERED that Plaintiff's Motion to Compel (ECF No. 100) is GRANTED. Within 14 days of the date of this order, Defendant ShipMate, Inc. shall provide answers responsive to Plaintiff U, Inc.'s First Interrogatories to ShipMate and produce documents responsive to Plaintiff U, Inc.'s First Request for Production of Documents to ShipMate, Inc.

IT IS SO ORDERED.

Dated this 19th day of June, 2015, at Kansas City, Kansas.

             s/  Teresa J. James
             Teresa J. James
             U.S. Magistrate Judge